[Crim. No. 5557. First Dist., Div. Two. Dec. 19, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM DONALD JOHNSON, Defendant and Appellant.

Geller & Knight and Clarence B. Knight for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Horace Wheatley, Deputy Attorney General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals following jury conviction of six of the nine counts in an indictment returned against him, Nicholas Nocera, Charles J. Ward, Audrey Huillade, Empire Builders, ''and other persons whose names are unknown to the Grand Jury.'' Counts 2, 7 and 9 were dismissed prior to trial. Counts 4 and 6 relate to the ''Martinez sale'' and counts 1, 3, 5 and 8 relate to the ''Hitchen sale.'' The case proceeded to trial against appellant alone.

Count 4 charged Nocera, Huillade, and ''John Doe'' of a violation of Penal Code section 484 (grand theft) in that they ''did unlawfully . . . take $4,269.72 from Hortense and Francisco Martinez.''

Count 6 charged Nocera, Huillade, and ''John Doe'' of a violation of Penal Code section 470 (forgery) in that they ''did unlawfully . . . forge a deed of trust to the home of Hortense and Francisco Martinez.''

On motion of the district attorney, made on the morning of the first day of trial, these counts were amended to insert appellant's name in the place of defendant ''John Doe.''

Mrs. Martinez testified at the trial that Nocera and appellant called at the home of herself and husband and sold them an aluminum siding installation for their house; that Nocera did most of the talking but that appellant ''backed him [Nocera] up on several things''; that, when she and her husband said they would buy the installation, appellant left; that Nocera remained and ''we signed [the] papers''; that she saw appellant only *on this one occasion.*

Appellant testified that the first time he had *ever seen* Mrs. Martinez was at the trial; that he had never been in her home; that, in fact, he had *never* even been in the town of Oakley, where her home was located.

Martinez was not called as a witness and Nocera was ''missing.'' Thus, the testimony of Mrs. Martinez constitutes the only incriminating evidence against appellant with respect to the Martinez counts.

Appellant's motion for a new trial on the ground of ''newly discovered evidence'' (Pen. Code, § 1181, subd. 8) was supported by (1) his attorney's declaration under penalty of perjury that when Mrs. Martinez appeared before the grand jury she was shown photographs of Nocera and appellant but could

only identify Nocera; that her identification of appellant at the time of trial came as a surprise to appellant and he was not prepared to meet it except by his own testimony; (2) declaration under penalty of perjury of one Earl Jasmin, executed at Portland, Oregon, that *he* (Jasmin) was the one who accompanied Nocera to the Martinez home on the occasion in question and that appellant was not present; (3) signed statement of Mrs. Martinez, executed two weeks after the trial, stating that, when the prosecutor had shown her and her husband photographs of appellant prior to the trial, "I was not sure he had been to my house but my husband identified him & I went along with my husband."

Respondent makes no objection to the consideration of the evidence, offered by appellant in support of his motion for new trial, as being "newly discovered" within the purview of the new trial statute. (Pen. Code, § 1181, subd. 8; for liberal view, cf. *People* v. *Williams,* 57 Cal.2d 263, 275 [18 Cal.Rptr. 729, 368 P.2d 353]; see also, Witkin, Cal. Criminal Procedure § 559.)

Despite the undisputed showing made by appellant, his motion for new trial was denied. However, on motion of the district attorney made *immediately following such oral denial,* the court ordered that the Martinez counts (4 and 6) be dismissed "in the interest of justice." (Pen. Code, § 1385.)

It is inconceivable that the trial court would have denied appellant a new trial, at least as to the Martinez counts, if it had *then* believed that appellant was not the person who had accompanied Nocera to the Martinez home.

A moment later, when the district attorney moved to dismiss the Martinez convictions, the court quite obviously changed its mind. This conclusion logically follows from the order of dismissal. The district attorney's motion was merely a recommendation by him and the court had exclusive discretion either to accept or reject it. (*People* v. *Parks,* 230 Cal.App.2d 805, 812 [41 Cal.Rptr. 329].)

While the Martinez convictions are thus eliminated from this appeal, there remains for consideration the effect of the trial testimony of Mrs. Martinez upon the jury's determination of the Hitchen charges.

The trial court instructed the jury that "if any witness examined before you has, in your opinion, willfully sworn falsely as to any material matter, you may, in your discretion, distrust his or her *entire* testimony. That is, being convinced that a witness has stated that which is untrue, not as a result

of mistake or inadvertence, but willfully and with a design to deceive, you may treat all of such witness's testimony with distrust and suspicion and *reject it all,* unless you believe that the witness in other particulars has sworn to the truth.'' (Italics added.)

It is implicit in the Martinez verdicts that the jury believed that appellant deliberately falsified when he testified that he was not the ''other man'' with Nocera. Having formed such an opinion of appellant's credibility with respect to the Martinez transaction, it is difficult to see how the jury could appraise his testimony as to the Hitchen transaction with an open, unprejudiced mind.

It was not too late for the trial court to have reexamined its denial of a new trial as to the Hitchen counts. The situation is similar to that in *People* v. *Hensel,* 233 Cal.App.2d 834, 837 [14 Cal.Rptr. 456],[1] where the court pointed out that ''the order denying the new trial motion had not yet been entered in the minutes, nor had any subsequent proceeding in the case begun.''

The opinion goes on to state, at pages 837-838: ''Where sentence has been pronounced, the trial court has authority to vacate it and to enter a different sentence at any time before the sentence is entered in the minutes or the execution of the sentence has begun. [Citation.] We see no reason why an order denying a new trial should be any more sacrosanct. If the possibility of error, or of an unwise use of discretion, is suggested to the trial court, before its order has become fixed either by clerical entry or by subsequent official action based on the order, the trial court should, and we are convinced does, have the power to reexamine its ruling.''

The crucial issue is thus whether the trial court should have reexamined its ruling on the motion for a new trial in the light of the reason for dismissing the Martinez convictions and thereupon ordered a new trial as to the Hitchen counts.

We have no doubt that Mrs. Martinez's erroneous identification of appellant caused him to be labeled as a perjurer in the minds of the jury and that this resulted in substantial prejudice to him in his defense to the Hitchen charges.

However, as required by our Constitution, article VI, sec-

---

[1] Hearing by Supreme Court unanimously denied June 23, 1965. The trial court in the instant case may have believed that, having denied the motion for a new trial, it was without jurisdiction to vacate that order. (See discussion in *Hensel, supra,* p. 837.)

tion 4½, ▮ we must determine whether, "after an examination of the entire cause, including the evidence," we "shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

▮ To comply with this constitutional mandate, we must consider conflicts in the evidence and to some extent weigh such evidence in order to determine whether in our opinion "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; *Aldabe* v. *Aldabe,* 209 Cal.App.2d 453, 457 [26 Cal.Rptr. 208]; *Kenworthy* v. *State of California,* 236 Cal.App.2d 378, 387 [46 Cal.Rptr. 396], fn. 4.)

▮ The Hitchen charges are as follows: Count 1 alleges that appellant, Nocera, Ward, Huillade and Empire Builders did "conspire to cheat and defraud persons[2] of property by criminal means and to obtain money and property by false pretenses and to obtain money and property by false promises with fraudulent intent not to perform such promises"; count 3 alleges that appellant and Ward violated Penal Code section 484 (grand theft) in that they "did unlawfully, willfully and feloniously take $3,693.12 from Dorothy and Kenneth Hitchen"; count 5 alleges that appellant and Ward violated Penal Code section 470 (forgery) in that they "did unlawfully, willfully, and feloniously forge a deed of trust to the home of Dorothy and Kenneth Hitchen"; count 8 alleges that appellant, Nocera, Ward, Huillade, and Empire Builders violated Penal Code section 182.1 (conspiracy) in that they "did unlawfully, willfully and feloniously conspire to commit the crime of forgery." (Note: this relates to same offense as alleged in count 5.) The facts relevant to the Hitchen transaction follow.

Appellant worked as a salesman for Empire Builders, a home improvement construction company. On February 1, 1964 he called upon Hitchen and his wife at their home in Concord for the purpose of selling them an installation of aluminum siding for their house.

Appellant represented to the Hitchens that their home had been selected as a "model" or "show" home and would be

---

[2]There are nine overt acts alleged in this count (Pen. Code, § 1104); the Hitchens are named in the first four as the "persons" and the Martinezes are named as such in the last five.

advertised as such in the newspapers; that in return, the price of the job would be reduced and they would be given either a prefabricated carport or sliding patio doors as a sort of "bonus."

Appellant had with him an "Empire Builders" printed form of "Proposal." Under the subhead of "Specifications," he wrote out the details of the proposed job.

No contention is made that Empire Builders did not complete the job satisfactorily. A small amount of painting was left undone and a door latch was not installed. The Hitchens agreed to do this themselves and Empire Builders reimbursed them in the sum of $28. The carport was delivered as agreed.

The first of the two wrongful acts complained of by the Hitchens is that appellant represented to them that "this price [$2,660] would be the total cost of our job, including all the charges," when in fact they found out later that they were obligated to pay a finance company the total sum of $3,963.12 in 84 monthly payments of $47.18 each. Thus, the Hitchens contend that they were defrauded of $1,303.12. This amount is labeled as the "Time Price Differential" on the "Lien Contract" form of the finance company which the Hitchens signed.

The Hitchens admitted that appellant filled out the form "Proposal" in their presence, which they signed, and that he left a completed copy with them. The prosecution introduced this copy in evidence. Wherever the figure of $2,660 appears thereon, it is referred to as the *cash* price.

Under the subhead "Specifications" appears the following in appellant's handwriting: "Cash Price 2660.00—which is to be Financed Plus interest—This price includes all cost pertaining to the work—"

The other references to price are on the lower half of the same page and are as follows: "PRICE OF JOB $2660.00 IF PAID IN CASH UPON COMPLETION OF WORK"; "CASH PRICE for all labor and materials $2660.00 DOWN PAYMENT $ None CASH BALANCE $2660.00" (Underscoring indicates handwriting.)

Below the above references to the *cash* price, there is the following provision: "If this work is to be financed, after credit has been approved, then this proposal shall be superseded by a 'lien contract' executed in accordance with terms and conditions of the 'Unruh Act.' Purchaser(s) will make application for a loan for the sum of $ — — — — — payable

in 84 monthly payments of $47.18 each.'' (Figures in handwriting.) Appellant got this computation from a rate schedule which he had with him.

Next is the following printed provision: ''The amount shown in the proposal [$2,660] is for labor and materials only and does not include any carrying charges. THE ABOVE MONTHLY PAYMENT INCLUDES ALL INTEREST CHARGES.''

Hitchens testified that, before signing the ''Proposal,'' he read over the ''Specifications'' and thought that he had also read the printed provisions, ''PRICE OF JOB $2660.00 IF PAID IN CASH UPON COMPLETION OF WORK,'' but that he could not remember whether he read anything below that at that time.

The second wrongful act charged against appellant in connection with the Hitchen transaction is that he tricked the Hitchens into signing a second deed of trust on their home. (Counts 5 and 8.) Procuring a genuine signature to a document by trick constitutes forgery. (*Buck* v. *Superior Court*, 232 Cal.App.2d 153, 162 [42 Cal.Rptr. 527].)

The Hitchens testified that, at appellant's request, they had signed the ''Proposal'' and a printed form of ''Lien Contract'' but that they did not *knowingly* sign any other kind of instrument; that appellant told them that their signatures did not ''go through'' to one of the carbon copies of the Proposal and that they would have to sign this also. It is the prosecution's theory that in this manner appellant was able to get the Hitchens to sign their names a third time and that what they then signed was a printed form of deed of trust and not a carbon copy of the Proposal.

Appellant testified that a deed of trust is required by the finance company if the contract price exceeds $1,500 and that he always told the customer about this requirement; that whenever a deed of trust was signed in his presence he always signed his name as a witness; that he did not sign the Hitchen deed of trust as a witness and that for this reason he did not believe that the Hitchens had signed such instrument on February 1, 1964, which was the only occasion when he was in their presence.

The deed of trust is witnessed by Charles J. Ward, charged jointly with appellant. It is dated February 12, 1964 and was recorded on February 14, 1964 at the request of the finance company, Alcoa Credit Company. The Hitchens denied signing anything in the presence of Ward other than a ''Buyer's Completion Certificate'' bearing the printed name of Alcoa Credit

Company. This is dated February 11, 1964. Ward was "missing" at the trial.

As we have seen, the jury did not believe appellant and found that he had falsely represented the cost of the job to the Hitchens (count 3) and had conspired with others to do so (count 1); that he had tricked the Hitchens into signing a second (or junior) deed of trust to secure payment of the job (count 5) and had conspired with others to do so (count 8).

We have discussed only some of the evidence, omitting any reference to the testimony of three housewives as to "similars" and making little reference to the high pressure "sales technique" allegedly used by appellant in consummating a sale.

From an examination of the entire record we have concluded that the prejudicial effect of Mrs. Martinez's testimony on appellant's credibility resulted in a miscarriage of justice within the purview of article VI, section 4½, of the California Constitution, as interpreted in *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243], and that appellant is entitled to a new trial.

The judgment of conviction and the order granting probation are and each is reversed; the appeal from the order denying appellant's motion for new trial is nonappealable and is therefore dismissed.

Shoemaker, P. J., and Taylor, J., concurred.