[Crim. No. 8076. Fourth Dist., Div. One. Apr. 19, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
HAROLD RICHARD MOORE, Defendant and Respondent.

## Counsel

Edwin L. Miller, Jr., District Attorney, Terry J. Knoepp and F. Dale Marriott, Deputy District Attorneys for Plaintiff and Appellant.

William B. Saunders, under appointment by the Court of Appeal, for Defendant and Respondent.

## Opinion

**BROWN (Gerald), P. J.**—The People appeal a judgment following an order granting a motion to dismiss in favor of Harold Richard Moore, defendant.

As required we recite the evidence most favorably to the prevailing party below.

In March 1974 Moore was arrested on a minor drug charge. A beautiful investigator of the district attorney's investigation unit, Ms. Casey, contacted him and solicited his cooperation in investigating organized crime. Moore declined. Ms. Casey said to Moore as she left, "Any time you want to talk to me, call me." The charges were dismissed.

In May 1974 Moore was again arrested. A parole hold was lodged against him, He was arraigned on charges of burglary (Pen. Code, § 459), grand theft (Pen. Code, § 487, subd. 1), and receiving stolen property (Pen. Code, § 496, subd. 1). Attorney Robert J. Nareau was appointed as Moore's counsel. In early June 1974, while in custody, Moore sought to telephone Ms. Casey in the district attorney's office. Instead, he reached Mr. Cameron, who with another investigator, immediately visited him in jail. Over a period of time, and with the approval of attorneys in the district attorney's office, the investigators and Moore agreed Moore would work undercover in the area of organized crime and would testify for the prosecution in an unrelated armed robbery case, (People v. Gunsolus, San Diego County Sup. Ct. No. CR-32109). In return, Moore was to be released from custody and the fact of his cooperation would be conveyed to the sentencing judge in his case. Moore was also led to believe if his efforts culminated in the arrest and conviction of Joe Matranga, his case would be dismissed, his parole would be terminated, he would be relocated, and be given protection, a new identity, and $5,000-$10,000. Nareau was unaware of any of these activities and arrangements.

Moore was explicitly instructed not to inform his attorney about his dealings with the district attorney's office. One of the investigators falsely told Moore his attorney was inadequate and had been disbarred. More meetings were held, and the district attorney obtained a reduction in bail from $10,000 to $1,500. On August 14, 1974, Moore was released from custody. When told later, Nareau thought Moore had put up the $10,000 bail.

On August 20 and 21, 1974, Moore testified for the prosecution in People v. Gunsolus. Between August 21 and October 5, 1974, Moore did extensive undercover work, for which the district attorney's office furnished him weapons,[1] bugging devices and expense money. He was told not to appear for his trial on September 16, and to leave a false telephone number with his attorney. During this period Nareau attempted to contact Moore but was unable to reach him at the number he had been given. Moore's trial was continued until September 18 when it was further continued to December 2 on motion of the People.

On September 18 Moore testified for the prosecution in the murder trial of People v. Caldwell, San Diego County Superior Court No.

---

[1]Moore was a felon, on parole.

CR-31642. Afterward he was beaten severely by four men, and on another occasion was fired at with a shotgun. Two "contracts" were placed on his life.

On October 9, 1974, Moore was arrested for a parole violation and was placed in solitary confinement at the city jail. Nareau was not notified. On October 24, 1974, Moore was not released to attend his trial readiness conference. Nareau thought he had willfully failed to appear and the court issued a bench warrant.

On December 2, 1974, trial was set for December 18, 1974, but at the readiness conference a trial date of February 6, 1975, was set on Moore's motion, in order to allow his newly appointed counsel time to prepare. (Nareau had been replaced because of illness.) On January 23, 1975, Moore noticed a motion to dismiss the action. The motion was granted on the grounds he was denied due process of law and effective aid of counsel.

The People claim Moore was not denied aid of counsel at a critical stage of criminal proceedings because no plea bargain was achieved, and their use of Moore was for purposes unrelated to his own case. The People overlook the offers and assurances the district attorney's office gave Moore as to his own case.

During the entire period of his activities with the district attorney, Moore was entitled to the services of his appointed counsel (*Powell* v. *State of Alabama*, 287 U.S. 45, 57 [77 L.Ed. 158, 164-165, 53 S.Ct. 55, 59-60, 84 A.L.R. 527]). ■ The district attorney's office made no effort to inform Nareau of its arrangements with Moore and debased the attorney-client relationship by disparaging the professional capabilities of Nareau and by encouraging Moore to tell him nothing of their dealings. Such conduct violates Standard 4.1(b) of American Bar Association Minimum Standards for Criminal Justice, which provides: "It is unprofessional conduct for a prosecutor to engage in plea discussions directly with an accused who is represented by counsel, except with counsel's approval."

■ Under active instigation to operate without his appointed counsel, and imbued with the false impression he would gain freedom, Moore collaborated with the district attorney. In so doing he jeopardized his personal safety and relinquished the basis on which he and his counsel might have reached a favorable plea bargain with the district attorney.

Plea bargaining is an accepted practice indispensable to the efficient administration of criminal justice (*People* v. *West,* 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409]). The People contend there was no plea bargaining because no plea was reached. The argument is vacuous. The absence of a plea, and the meager benefits Moore received from his unaided bargaining, underscore the prejudicial effect of acting without counsel during crucial pretrial negotiations. It is idle to speculate whether Moore's counsel could have worked out a better deal with the district attorney. The point is, Moore was entitled to have him try. Lack of effective counsel at a critical stage of proceedings renders them constitutionally defective. (*Anderson* v. *State of North Carolina,* 221 F.Supp. 930, 934-935.)

At oral argument the People likened their intrusion into Moore's relationship with his attorney to a violation of the rights announced in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. They argue Moore's remedy is to exclude from his trial any evidence gained by their acts in that regard.

This is not a case where the People have merely failed to advise a defendant of his rights to counsel and have gained evidence from one who has not knowingly waived his right to counsel. What results from a violation of *Miranda* rights is tainted evidence, and the exclusionary rule is adequate to cope with the violation.

Here the People actively interfered with an attorney-client relationship established to defend Moore against the charges for which he had been jailed. Resort to a rule of evidence cannot reasonably remedy violations of Moore's right to counsel which go to the very conduct of his defense. It is not evidence which has been tainted, rather, it is Moore's right to due process.

Due process is not a yardstick of definite value, but rather is an embodiment of the traditional notions of fair play and justice (*Rochin* v. *California,* 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396]). It is clearly violated when a defendant is denied counsel in criminal proceedings (*People* v. *Mora,* 120 Cal.App.2d 896, 900 [262 P.2d 594]; *Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]), but may also be denied under circumstances which do not include an outright refusal to provide counsel. Such is the case here, where the district attorney has undermined Moore's right to counsel, imperiled his life, overreached and lulled him with illusory promises,

and caused substantial delays in his trial; all to capitalize on a situation so desperate Moore was driven to attempt suicide by hanging himself while in custody on Christmas Eve 1974.

The judgment is affirmed.

Cologne, J., concurred.

**AULT, J.**—I concur in every respect with the opinion written by Presiding Justice Brown. I find the record in this case shocking. For example: the district attorney's office maintains its dealings with Moore were wholly unrelated to the criminal charges pending against him and hence claims there was no need to advise his attorney of what was going on. Yet the undisputed evidence shows that representatives of that office instructed Moore not to show up for scheduled court appearances in his criminal case, to falsely advise his attorney he was ill and could not appear, and to give his attorney an incorrect telephone number so he could not be reached. In short, the district attorney's office manipulated the criminal proceedings by dealing directly with Moore and behind his attorney's back to make Moore available to serve its own purposes in other matters. Other conduct by representatives of that office was equally reprehensible.

A petition for a rehearing was denied May 3, 1976.