[No. A026269. First Dist., Div. Three. July 8, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MORRIS BENSON STEWART, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Part II is not certified for publication. (Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

James J. Haight, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Blair W. Hoffman, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

SCOTT, J.—A jury convicted appellant Morris Benson Stewart of three counts of attempted robbery (Pen. Code, §§ 664, 211) and three counts of false imprisonment (Pen. Code, § 236) and found that he used a firearm during commission of these offenses (Pen. Code, §§ 12022.5, 1203.06). The jury also convicted appellant of possession of a firearm by a felon. (Pen. Code, § 12021.) In addition, the trial court found that appellant had suffered four prior felony convictions. (Pen. Code, §§ 667, 667.5.) Appellant contends that his conviction should be reversed because the court (1) refused to give a requested jury instruction relating eyewitness identification to reasonable doubt; and (2) denied his motion to exclude use of four prior

robbery convictions for impeachment. The case has been retransferred to this court for reconsideration in light of *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111].

I

On September 24, 1983, at about 12:15 p.m., several employees were working in the kitchen area of the Chuck E. Cheese restaurant in Redwood City when a man in a brown cap entered, carrying a black gun with a brown handle. He ordered Luis Galindo to open the office door, but it was locked, and only the manager had the key. Desiree O'Donnell was allowed to go find the manager, who was already aware of the incident and had notified police. The man fled.

Several of the employees identified appellant as the man with the gun. O'Donnell testified that she was 80 percent sure that appellant was the robber. Galindo also identified appellant, although on cross-examination he stated that he thought appellant was a little taller than the man with the gun. Edward Smith identified appellant, and Charles Accurso thought that appellant looked like the robber, although he was not positive. A .38 caliber pistol seized in a search of appellant's home looked like the one carried by the robber. Two other employees were unable to identify appellant.

Officer Shelley Aldridge of the California Highway Patrol (CHP) was getting off duty at approximately 12:15 p.m. on September 24. As she was leaving the CHP parking lot, she saw a black adult male running from the Chuck E. Cheese restaurant across the street. The man, who was wearing a tan cap and brown pants, climbed into the trunk of a tan-over-brown Cadillac which was parked in the restaurant's lot. The Cadillac then drove out of the lot. Aldridge followed it for a time, and noted its license number.

Officer Henry Begnaud of the CHP spoke to appellant's wife at her home in Stockton on the evening of September 24, in response to her report of a stolen vehicle, a Cadillac which had a license number identical to the one observed by Officer Aldridge. Appellant's wife stated that she last saw the car at about 7 a.m. that morning. Two days later CHP Officer Clark took a report from a man who identified himself as Morris Stewart regarding the recovery of the vehicle. Officer Clark observed in appellant's driveway a tan-over-brown Cadillac; its license number matched that reported by Officers Aldridge and Begnaud. Appellant told Clark that the car had been borrowed by his nephew, David Pierce, and that appellant had retrieved the car in San Francisco after Pierce telephoned him about some car trouble. Appellant stated that he drove the vehicle back from San Francisco on that

day. However, it was stipulated that Pierce was actually in prison on September 24, 1983.

Appellant did not testify, but offered an alibi defense. Robert Kennedy, appellant's brother-in-law testified that on September 24, there was a family gathering in Auburn, which is about 119 miles from San Francisco. Appellant's wife arrived in the morning in a blue Plymouth, and appellant arrived at between 12:30 p.m. and 2 p.m. in a Cadillac other than the brown and tan Cadillac. Elizabeth Kennedy, appellant's sister-in-law, thought that appellant arrived in Auburn at close to 2 p.m.

## II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III

Appellant moved pursuant to *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] to exclude use of his four prior robbery convictions for impeachment, and stated that an unfavorable ruling on his motion would effectively preclude his right to testify in his own behalf. The trial court denied the motion, and decided that any or all of the priors could be used for impeachment on the grounds that article I, section 28, subdivision (f) of the California Constitution, enacted in 1982 as part of the Victims' Bill of Rights (Prop. 8), had in effect overruled *Beagle,* and that use of the priors would not violate appellant's right to due process under federal law. Appellant did not testify.

In *People* v. *Castro, supra,* 38 Cal.3d 301, in four separate opinions, a splintered Supreme Court considered the effect of section 28 on impeachment with priors. ■ What emerges from an analysis of those opinions is that all prior felonies necessarily involving "moral turpitude" are admissible for purposes of impeachment (*id.,* at pp. 316 (Kaus, J., Mosk, J., and Broussard, J.), 322 (conc. and dis. opn. by Grodin, J.)), but that the trial court retains discretion pursuant to Evidence Code section 352 to exclude such felonies (*id.,* at pp. 312 (Kaus, J., Mosk, J., and Broussard, J.), 323 (conc. and dis. opn. by Bird, C. J. and Reynoso, J.); *People* v. *Campos*† (Cal.App.)).

■ The first question, therefore, is whether appellant's prior robbery convictions involved moral turpitude. In answering that question, we look

---

*Part II is not certified for publication. (See fn., *ante,* at p. 59.)

†Reporter's Note: Deleted on direction of Supreme Court by order dated July 11, 1985.

to the elements of the offenses. (*People* v. *Castro, supra,* 38 Cal.3d at pp. 316-317.) Robbery is the felonious taking of personal property in the possession of another, from his or her person or immediate presence, and against his or her will, accomplished by means of force or fear (Pen. Code, § 211); it is beyond dispute that robbery necessarily involves moral turpitude or the " 'readiness to do evil,' " and evinces a character trait which can reasonably be characterized as " 'immoral.' " (*Castro, supra,* at pp. 314, 317, fn. 13.)

However, the trial court erred in this case when it concluded it had no discretion to exclude appellant's priors, and we must decide whether it is reasonably probable that a result more favorable to appellant would have occurred in the absence of that error. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Castro, supra,* 38 Cal.3d at p. 319.)

In *People* v. *Beagle, supra,* 6 Cal.3d 431, as in this case, the trial court admitted a prior for impeachment without weighing its probative value against its prejudicial effect. Nevertheless, the Supreme Court concluded that the prior was properly admitted, because the "reasonable exercise of judicial discretion by the trial court could not have justified the exclusion" of the prior. (*Id.,* at p. 454.) We have reached a similar conclusion in this case.

We first note that the court's opinions in *People* v. *Castro* provide little enlightenment as to the parameters of the trial court's discretion under Evidence Code section 352 when a felony involving moral turpitude is offered for impeachment. The three-justice lead opinion does not squarely address the question. Instead, it states that *Beagle* was never intended to establish rigid standards governing the trial court's exercise of its section 352 discretion, and that the electorate has rejected the "rigid, black letter rules of exclusion" which the Supreme Court grafted onto the Evidence Code with its "*Antick* [*People* v. *Antick* (1975) 15 Cal.3d 79 (123 Cal.Rptr. 475, 539 P.2d 43)] line of decisions." (*People* v. *Castro, supra,* 38 Cal.3d at pp. 306-313.) Two members of the court state that the "suggested" factors set forth in *Beagle* should continue to "guide" trial courts in the exercise of discretion. (*Id.,* at p. 323 (conc. and dis. opn. of Bird, C. J.).) One of the members of the court who would have held that section 28 eliminated the trial court's discretion to exclude priors assumes that now trial and appellate courts "are both to be guided" by the factors enunciated in *Beagle.* (*Id.,* at p. 320 (conc. and dis. opn. of Grodin, J.).)

First, it is apparent that these statements concerning how trial courts are now to exercise discretion in such matters were dicta, or observations un-

necessary to the court's decision to affirm the judgment. (See *Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 668 [125 Cal.Rptr. 757, 542 P.2d 1349] [broad language in a case to be distinguished from its narrow holding].) ■ In addition, no opinion has value as a precedent on points as to which there is no agreement of a majority of the court. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 699, p. 4616; see *Del Mar Water, etc. Co.* v. *Eshleman* (1914) 167 Cal. 666, 682 [140 P. 591]; *City of Oakland* v. *Buteau* (1919) 180 Cal. 83, 88 [179 P. 170]; *Smith* v. *Evans* (1974) 42 Cal.App.3d 154, 157 [116 Cal.Rptr. 684].) Therefore, lacking clear direction from the Supreme Court, we turn to settled principles generally applicable when a trial court has discretion to act. It has been said that the term judicial discretion implies the absence of arbitrary determination, capricious disposition, or whimsical thinking. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) ■ The term means the exercise of discriminating judgment within the bounds of reason. To exercise judicial discretion, a court must know and consider all material facts and all legal principles essential to an informed, intelligent, and just decision. (*In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307, 490 P.2d 819].)

■ When the question on appeal is whether the trial court has abused its discretion, the showing is insufficient if it presents facts which merely afford an opportunity for a difference of opinion. An appellate tribunal is not authorized to substitute its judgment for that of the trial judge. (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. (*Jessup Farms* v. *Baldwin* (1983) 33 Cal.3d 639, 650-651, fn. 7 [190 Cal.Rptr. 355, 660 P.2d 813].) In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. (See *People* v. *Gimenez, supra,* 14 Cal.3d at p. 72.)

These general principles, which have often been restated, are applicable to the trial court's power to exercise its discretion pursuant to Evidence Code section 352. That section permits the court, in its discretion, to exclude evidence if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. ■ The weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon mechanically automatic rules. (*People* v. *Yu* (1983) 143 Cal.App.3d 358, 377 [191 Cal.Rptr. 859].) Moreover, the trial court's ruling under section 352 will be upset only if there is a clear showing of an abuse of discretion. (*People*

v. *Adams* (1980) 101 Cal.App.3d 791, 799 [162 Cal.Rptr. 72]; *People* v. *Kelley* (1977) 75 Cal.App.3d 672, 678 [142 Cal.Rptr. 457].)

Mindful of these principles, we consider appellant's four robbery prior convictions. As we have stated, appellant's four robbery convictions unquestionably involved moral turpitude and were therefore probative on the issue of his honesty. (*People* v. *Castro, supra,* 38 Cal.3d at p. 314.) Moreover, even under the now rejected "*Antick* line of cases," a robbery prior was considered to have some direct relevance to dishonesty. (See *People* v. *Rist* (1976) 16 Cal.3d 211, 220 [127 Cal.Rptr. 457, 545 P.2d 833].) A series of crimes relevant to credibility is more probative than is a single such offense. (*People* v. *Holt* (1984) 37 Cal.3d 436, 452-453 [208 Cal.Rptr. 547, 690 P.2d 1207].) In short, the probative value of appellant's priors for impeachment purposes was high. As for their potential prejudicial impact, it is true that they were identical to the crime charged, but that fact no longer compels their exclusion. (See *People* v. *Campos, supra,* (Cal.App.).) In addition, appellant's claim to the trial court that the admissibility of the priors would prevent him from testifying is unpersuasive. His decision not to testify did not keep the fact of his criminal past from the jury; he was charged with violating Penal Code section 12021, and to prove that charge, during its case in chief, the prosecution introduced into evidence an abstract of judgment showing that appellant had been convicted of robbery. Finally, regardless of what motivated appellant's decision not to testify, the jury was not thereby entirely deprived of his version of the facts, as it heard his two alibi witnesses.

We conclude, therefore, that the "*reasonable* exercise of judicial discretion by the trial court could not have justified the exclusion" of all of these priors. (See *People* v. *Beagle, supra,* 6 Cal.3d at p. 454, italics added.) In other words, while the trial court may have reasonably concluded that all four priors should not have been admitted, it would not have excluded all of them, because "[n]o . . . defendant who elects to testify in his own behalf is entitled to a false aura of veracity." (*Id.,* at p. 453.) Accordingly, it is not reasonably probable that a result more favorable to appellant would have occurred had the court properly exercised its discretion.

Judgment is affirmed.

White, P. J., and Anderson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.