[No. B018788. Second Dist., Div. Six. Dec. 29, 1986.]

ANTHENASIOS BOULAS, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

424

COUNSEL

Dennis G. Merenbach for Petitioner.

No appearance for Respondent.

Thomas W. Sneddon, Jr., District Attorney, and Gerald McC. Franklin, Senior Deputy District Attorney, for Real Party in Interest.

OPINION

STONE, J.—Here we are asked to decide the proper remedy for intentional interference by law enforcement personnel with the attorney-client relationship in the unique instance of such interference leading to the irremediable breakdown of that relationship. Under the highly unusual facts of this case, we find dismissal of charges to be the sole appropriate sanction.

### FACTS

On June 25, 1985, Anthenasios Boulas was charged with two counts of illegally selling cocaine in violation of Health and Safety Code section 11352. Attorney S. was retained by Boulas to represent him in the criminal proceedings.

In August of 1985, petitioner hired, for the sum of $3,000, a casual acquaintance by the name of William J. Harkness to serve as a "private

investigator."[1] It was agreed between Harkness and Boulas that Harkness would contact the authorities to determine whether they would be willing to enter into a plea bargain in exchange for Boulas's cooperation. Boulas did not tell Attorney S. of this plan.[2]

At some date in late August of 1985, Harkness telephoned Deputy Scott Tunnicliffe of the Santa Barbara Sheriff's Department. Harkness proposed an agreement in which Boulas would cooperate with law enforcement officials in exchange for leniency. Tunnicliffe agreed to meet and confer with Harkness in order to further discuss the matter.

On September 4, 1985, Tunnicliffe met with Harkness at a restaurant in Goleta. Harkness arranged for Boulas to attend this meeting. Tunnicliffe, quite properly, told Boulas that he could not discuss the case with him.[3] Nevertheless, Boulas stated his willingness to provide information concerning the activities of a number of major cocaine dealers within the area in exchange for leniency. Harkness and Boulas were advised by Tunnicliffe that he would have to discuss this offer with the district attorney's office before any deal could be struck.

Shortly thereafter, Tunnicliffe and Sergeant Arthur Purkheiser met with Deputy District Attorney Robert Calvert and discussed Boulas's offer. At this meeting, Calvert told the officers that a deal could only be made if Boulas were to replace Attorney S. with counsel who would be acceptable to the district attorney. An uncontested summary of this meeting appears in a report prepared by Tunnicliffe on December 16, 1985. The report states that, "[g]iven the current status of BULAS's [sic] case, and the potential for what Bulas [sic] could do, in addition the need for absolute security, it was Deputy Calvert's position that we could not operate this sort of program with Bulas's [sic] current attorney, and therefore as long as Bulas [sic] maintained [sic] his attorney, we would not work with it. [sic] It was agreed, however, that should Bulas [sic] retain an attorney which [sic] in the District Attorney's eyes along with the Sheriff's Department's eyes, was satisfactory to maintain the absolute security and secrecy of this type of an operation, then we could go ahead."

---

[1] Harkness was not licensed at the time to be an investigator.

[2] Our focus in the present case is upon the intentional interference by governmental agents with Boulas's attorney-client relationship. The fact that Boulas and Harkness initiated the contact with the authorities is irrelevant to our analysis.

[3] There is no evidence in the record that Boulas discussed the present case with Officer Tunnicliffe.

It appears that another meeting took place on or about September 5, 1985. Tunnicliffe, relying upon Calvert's statements, told Boulas that he must fire Attorney S. and retain another attorney in order to secure a plea bargain. The officer justified the condition with the explanation that the authorities did not trust S. because the attorney was a user of drugs. Shortly thereafter, Boulas telephoned Attorney S. and advised him that his services were no longer needed. Boulas did not disclose to Attorney S. the reason he was discharging him.

On September 6, 1985, Harkness telephoned Tunnicliffe and asked him if any of four named attorneys would be acceptable to the authorities. Tunnicliffe stated that his office would not be willing to work with any of the four, and that Harkness must attempt to find some other attorneys. Tunnicliffe telephoned Calvert and asked his opinion as to whether either of two attorneys would be acceptable to the prosecutor's office as counsel for Boulas. Calvert responded that representation by one of the named attorneys would be acceptable.

Harkness called Tunnicliffe back about 20 minutes later and provided the names of 3 more attorneys. At this juncture, Tunnicliffe directed that Harkness turn to a certain page of the Yellow Pages. He carefully guided Harkness around and about the page until Harkness was led to the name of Attorney C. Harkness was advised that Attorney C. would be acceptable to the authorities.[4]

A transcript of a tape recording of this conversation was presented as evidence in the hearing held in superior court. A perusal of this document reveals that Tunnicliffe told Harkness to go to the first column of the page under the heading of "criminal law." Harkness was then directed to view the listing that immediately followed the name of a criminal law attorney whose name begins with the letter "B," and who was among those attorneys rejected by Tunnicliffe in the previous telephone call. Voila, Harkness stumbled upon the name of Attorney C., and asked whether Attorney C. was a viable candidate. Tunnicliffe remarked that Boulas's retention of Attorney C. "would probably work."

Boulas arranged for an appointment with Attorney C. Boulas told Attorney C. that he wanted C. to represent him in the pending criminal case. He was vague with respect to the details of the case. Boulas told Attorney C. to call prosecutor Calvert for further information. C. conferred briefly

---

[4]Attorney C. had worked for the Santa Barbara District Attorney's office for a period of 14 years.

with Calvert and was advised that Boulas was going to work as an informant. C. then advised Calvert that he was not going to represent Boulas on that basis. A few days later, Attorney C. called Boulas and stated that he was not interested in taking the case. At this point, Boulas was left without the aid of any counsel.

Boulas continued to work with the authorities, seemingly assured that leniency would be forthcoming. During meetings held on September 17, and 18, 1985, Boulas provided, in the words of Officer Tunnicliffe, "detailed information in regards [*sic*] to subjects that he could apparently obtain cocaine from."

On September 18, 1985, Tunnicliffe was told by another deputy district attorney that the district attorney's office was no longer interested in entering into a plea bargain with Boulas. On September 23, 1985, Tunnicliffe met with Boulas and advised him that an agreement with the authorities would no longer be possible.

Boulas, now without an attorney, and short of funds, telephoned Attorney S. and asked if S. would again agree to represent him. A few days later, Attorney S. resumed his role as counsel of record.[5] The record reveals that S. made a number of motions and appearances on Boulas's behalf during the next two months. On December 4, 1985, Boulas substituted present counsel for Attorney S. Boulas informed counsel of his previous efforts to cooperate with law enforcement.

On December 27, 1985, Boulas brought a motion to dismiss the action pursuant to Penal Code section 1385,[6] upon the ground that the conduct by the district attorney's office and the sheriff's department interfered with his rights to counsel and to a fair trial. (*Barber* v. *Municipal Court* (1979) 24 Cal.3d 742 [157 Cal.Rptr. 658, 598 P.2d 818]; *People* v. *Moore* (1976) 57 Cal.App.3d 437 [129 Cal.Rptr. 279].)

---

[5]Boulas did not advise S. of his offer to become an informant. On October 2, 1985, Attorney S. called Tunnicliffe and asked if Boulas was working as an informant for the sheriff's department. Tunnicliffe stated that Boulas was not. The officer made no mention of Boulas's previous contacts with the sheriff's department.

[6]Penal Code section 1385 provides, in part, that "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in the furtherance of justice, order an action to be dismissed." An accused may not formally bring a motion under section 1385 to dismiss the charges filed against him. (*People* v. *Trevino* (1985) 39 Cal.3d 667, 698, fn. 32 [217 Cal.Rptr. 652, 704 P.2d 719]; *People* v. *Ritchie* (1971) 17 Cal.App.3d 1098, 1104 [95 Cal.Rptr. 462].) However, a motion to dismiss, improperly made under section 1385, may be treated as if it were made on the court's own motion. (*People* v. *Angeles* (1985) 172 Cal.App.3d 1203, 1210, fn. 7 [218 Cal.Rptr. 756].)

In the present case, the court viewed petitioner's "motion" to dismiss to be an invitation that it exercise its discretionary powers of dismissal.

On January 27-29, 1986, the trial court conducted an evidentiary hearing. At the conclusion of this hearing, the court found that Tunnicliffe "deliberately and intentionally set out to get [Boulas] to change his attorney, to discharge [Attorney S.] and to hire another attorney; the attorney that Tunnicliffe believed would be someone that the District Attorney's office could work with." The court determined that Tunnicliffe's conduct was a clear violation of Boulas's right to counsel.

However, the court declined Boulas's invitation to dismiss the charges. In making this ruling, the court was of the view that Boulas was not prejudiced and could be adequately protected by orders which would deny the prosecution the fruits of any inculpatory information gleaned as a result of its intrusion into Boulas's relationship with Attorney S.

Boulas sought relief by way of a petition for prohibition. We shall treat the present writ as one for mandate. (*Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97, 105 [73 Cal.Rptr. 575, 447 P.2d 967].)

### DISCUSSION

There is no question that governmental authorities acted improperly when they contacted Boulas outside of the presence of his attorney to advise him to fire Attorney S. The crucial issue confronting us is whether dismissal is an appropriate remedy under the circumstances presented in this case.

When conduct on the part of the authorities is so outrageous as to interfere with an accused's right of due process of law, proceedings against the accused are thereby rendered improper. (*Rochin* v. *California* (1952) 342 U.S. 165, 172 [96 L.Ed. 183, 190, 72 S.Ct. 205, 25 A.L.R.2d 1396]; *United States* v. *Bogart* (9th Cir. 1986) 783 F.2d 1428, 1433; *People* v. *McIntire* (1979) 23 Cal.3d 742, 748, fn. 1 [153 Cal. Rptr. 237, 591 P.2d 527]; *People* v. *Harris* (1985) 165 Cal.App.3d 324, 331-332 [211 Cal.Rptr. 493]; *People* v. *Peppars* (1983) 140 Cal.App.3d 677, 685-686 [189 Cal.Rptr. 879].) Dismissal is, on occasion, used by courts to discourage flagrant and shocking misconduct by overzealous governmental officials in subsequent cases. (*Barber* v. *Municipal Court, supra,* 24 Cal.3d at pp. 759-760; *People* v. *Moore, supra,* 57 Cal.App.3d at p. 442.)

The prosecution contends that, absent any proof of Boulas's having been harmed, dismissal of the charges filed against him is an inappropriate sanction for the violation of a criminal defendant's Sixth Amendment rights. (*United States* v. *Morrison* (1981) 449 U.S. 361, 364-365 [66 L.Ed.2d 564, 567-568, 101 S.Ct. 665]; *People* v. *Glover* (1985) 169 Cal.App.3d 689, 700-701 [215 Cal.Rptr. 456].) They assert that mere governmental intrusion

into the attorney-client relationship does not, in every case, in and of itself, necessarily violate an accused's right to counsel and require dismissal. (*Weatherford* v. *Bursey* (1977) 429 U.S. 545 [51 L.Ed.2d 30, 97 S.Ct. 837]; *People* v. *Towler* (1982) 31 Cal.3d 105, 122 [181 Cal.Rptr. 391, 641 P.2d 1253].) The prosecution argues that Boulas cannot prove prejudice, because he presently has retained a competent attorney to handle his defense and because no information relating to present charges was obtained by the authorities.

The prosecution's argument fundamentally misunderstands the scope and breadth of the state's invasion of Boulas's right to be represented by counsel of choice. ▇▇▇ Criminal defense lawyers are not fungible. The attorney-client relationship ". . . involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty." (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 561 [68 Cal.Rptr. 1, 440 P.2d 65].) ▇▇▇ In order to provide effective assistance of counsel, it is essential that a defendant have full confidence that his attorney is representing the defendant's interests with all due competence. (*Upjohn Co.* v. *United States* (1981) 449 U.S. 383, 389 [66 L.Ed.2d 584, 591, 101 S.Ct. 677].) "When clients and lawyers lack rapport and mutual confidence the quality of representation may be so undermined as to render it an empty formality." (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 613 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333].)

▇▇▇ A person formally charged with committing a crime finds himself confronted by "the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." (*Kirby* v. *Illinois* (1972) 406 U.S. 682, 689 [32 L.Ed.2d 411, 418, 92 S.Ct. 1877].) The purpose of the appointment of counsel is to ensure that the accused "not be left to his own devices" when confronting these forces. (*Moran* v. *Burbine* (1986) 475 U.S. 412, 430 [89 L.Ed.2d 410, 427, 106 S.Ct. 1135].) One of the crucial roles played by defense counsel is that of serving as a "medium through which the demands and commitments of the sovereign are communicated to the citizen." (*Brewer* v. *Williams* (1977) 430 U.S. 387, 415 [51 L.Ed.2d 424, 447, 97 S.Ct. 1232] (Stevens, J., concurring).) ▇▇▇ An accused's communications with the prosecution relating to plea bargains are recognized as "critical stages" of the proceedings. (*People* v. *Moore, supra,* 57 Cal.App.3d at p. 441.) ". . . [G]overnment efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies. [Citations.]" (*Michigan* v. *Jackson* (1986) 475 U.S. 625, 630 [89 L.Ed.2d 631, 638, 106 S.Ct. 1404].)

██ It is not always easy to compute the effect of governmental tampering with the attorney-client relationship. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." (*Glasser* v. *United States* (1942) 315 U.S. 60, 76 [86 L.Ed. 680, 702, 62 S.Ct. 457]; see also *Barber* v. *Municipal Court, supra,* 24 Cal.3d at p. 757; *People* v. *Moore, supra,* 57 Cal.App.3d at p. 442.)

██ Our system of criminal jurisprudence has long recognized the right of an accused to be aided by effective assistance of counsel of his own choosing at all critical stages of criminal proceedings. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792]; *Powell* v. *Alabama* (1932) 287 U.S. 45, 57 [77 L.Ed. 158, 164-165, 53 S.Ct. 55]; *People* v. *Courts* (1985) 37 Cal.3d. 784, 789 [210 Cal.Rptr. 193, 693 P.2d 778]; *Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 797-798 [140 Cal.Rptr. 318, 567 P.2d 750]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 434 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Logan* (1854) 4 Cal. 188.) ██ The right to assistance of counsel is "indispensable to the fair administration of our adversarial system of criminal justice," and "safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding." (*Maine* v. *Moulton* (1985) 474 U.S. 159, 168-169 [88 L.Ed.2d 481, 491, 106 S.Ct. 477]; see also *People* v. *Courts, supra,* 37 Cal.3d at pp. 789-790.) ██ The state is obliged "to refrain from unreasonable interference with the individual's desire to defend himself in whatever manner he deems best, using every legitimate resource at his command." (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 206 [53 Cal.Rptr. 284, 417 P.2d 868].) The state must respect, and not interfere with, a defendant's "right to decide for himself who can best conduct the case . . . ." (*Maxwell* v. *Superior Court, supra,* 30 Cal.3d at p. 615.)

It is important to note that, in *United States* v. *Morrison, supra,* 449 U.S. 361, the Supreme Court did not rule out the possibility of ordering the dismissal of a case upon a proper showing of prejudice. The court, in *Morrison,* found that the record tendered by the defendant failed to "reveal a pattern of *recurring* violations by investigative officers that might warrant the imposition of a more extreme remedy in order to deter further lawlessness." (*Id.* at pp. 365-366, fn. 2 [66 L.Ed.2d at p. 569], italics added.)

There exist factual distinctions between *Morrison* and the present case. The defendant in *Morrison* was twice contacted by police officers. During these visits, the officers berated her attorney's competence and sought her cooperation in another case. She declined to cooperate, did not supply any

information pertinent to her case, and kept her attorney. (*Id.* at pp. 362-363 [66 L.Ed.2d at pp. 566-567].)

There is no suggestion in *Morrison* that the prosecutor's office partici-pated in the decision of the police officers to speak with the defendant outside of the presence of her attorney. In contrast, the record before this court contains substantial evidence of such participation on the part of a deputy district attorney.

 The deputy district attorney must have been aware of the most basic of rules, that "[a]n accused person who is represented by counsel cannot be interrogated without the express consent of his or her attorney." (*People* v. *Sharp* (1983) 150 Cal.App.3d 13, 17 [197 Cal.Rptr. 436]; see also *People* v. *Moore, supra,* 57 Cal.App.3d at p. 441.) Calvert's statements to Tunnicliffe served to encourage Tunnicliffe to further pursue the matter. Although Calvert may not have intended Tunnicliffe to destroy Boulas's relationship with Attorney S., the manner in which he told Tunnicliffe of the problem of working with Attorney S. understandably left Tunnicliffe with the impression that he was given tacit approval to find a means of under-mining Boulas's relationship with Attorney S. Calvert ought properly to have instructed Tunnicliffe to cease further communications with Boulas and Harkness. He ought to have called Attorney S. and informed him what had happened.

Calvert knew that Tunnicliffe was continuing to contact Boulas and that Boulas had started shopping for a new attorney. He knew which attorneys were being considered by Boulas as a replacement for Attorney S. and gave Tunnicliffe his opinion as to whether the prosecutor's office would be willing to work with any of these candidates. Calvert, by not taking any steps to further investigate what Tunnicliffe was doing, by not telling him to halt his discussions with Harkness and Boulas, and by participating in the selection of a new attorney, gave his tacit approval to continuing governmental inter-ference with Boulas's right to counsel of his own choosing.

The prosecution advised Tunnicliffe that his office would not work with Attorney S., but would reconsider its position, should Boulas no longer be represented by Attorney S.[7] This encouraged Tunnicliffe to destroy Boulas's relationship with Attorney S., and to handpick a new attorney acceptable to the prosecutor.

---

[7]"[W]hile a prosecutor may refuse to plea bargain with alleged criminal violators, he may not do so solely because the defendant has selected a particular defense counsel." (*State* v. *Martin* (1984) 139 Ariz. 466 [679 P.2d 489, 504].)

Deputy District Attorney Calvert was obligated to give due respect to, and to preserve, Boulas's choice of counsel. (*People* v. *Crovedi, supra,* 65 Cal.2d at p. 206.) "[A]t the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." (*Maine* v. *Moulton* (1985) 474 U.S. 159, 171 [88 L.Ed.2d 481, 493, 106 S.Ct. 477].) Yet, it is precisely this proscribed action which took place.

In maintaining recurring contact with Boulas without the knowledge of Attorney S., the authorities effectively short-circuited Boulas's right to be assisted by counsel at a critical stage of the proceedings. Exclusion of Attorney S. from conversations denied Boulas the right to have his counsel attempt to obtain a negotiated disposition. (Cf. *People* v. *Moore, supra,* 57 Cal.App.3d at p. 442.) It is highly probable that conversations outside the presence of counsel may have served to impede whatever opportunity defense counsel would otherwise have had to secure a plea bargain. (*People* v. *Sharp, supra,* 150 Cal.App.3d 13, 18-19.)

The authorities made no effort to advise S. that they were engaged in conversations with his client. In fact, they answered in the negative when Attorney S. asked whether Boulas was going to be an informant. (See *ante,* at fn. 5.)

Tunnicliffe's statements that Attorney S. could not be trusted by the prosecution, that Attorney S. used drugs and must, therefore, be fired before any plea bargain could be offered, obviously did little to enhance Boulas's confidence in his counsel. The evidence presented reveals that these comments were made with the clear intention of convincing Boulas to remove S. as his attorney. As an added fillip, Officer Tunnicliffe took the trouble to personally select the name of a replacement for Attorney S.

We find it to be beyond peradventure that the above-stated course of conduct undertaken by law enforcement officials actively caused irremediable harm to Boulas's relationship with his attorney and was, therefore, improper. As noted by the trial court, Officer Tunnicliffe "did everything he could to get [Boulas] to get rid of Mr. [R.]." Officer Tunnicliffe's urgings and promises came to fruition when Boulas fired Attorney S. and retained an attorney selected by the sheriff's department and approved by the prosecution. When that attorney declined to provide representation, Boulas was left for a period of over two weeks without the assistance of counsel. Boulas's loss of counsel took place during a period in which he was in frequent communication with the government in attempting to secure a negotiated disposition.

The subversion of Boulas's rights comes to our attention for the sole reason that the wrongful intrusion by the governmental authorities was only incidentally disclosed to the trial court. Lest an effective remedy be afforded, courts will become the unwitting instruments through which authorities wrongfully impede the exercise of basic constitutional rights.

■ The remedy of exclusion of evidence is inadequate in instances of intentional subversion of the attorney-client relationship by governmental agents. "An exclusionary remedy is not only ineffective as a deterrent, but the problems of proof inherent in the remedy when applied to violations of the right to counsel would be inadequate to assure that the prosecution does not benefit from the illegality." (*Barber* v. *Municipal Court, supra,* 24 Cal.3d at p. 759.)

The intentional undermining of an individual's right to counsel of his own choosing cannot be countenanced under any rational standard of justice. (*Barber* v. *Municipal Court, supra,* 24 Cal.3d at pp. 759-760; *Commonwealth* v. *Manning* (1977) 373 Mass. 438 [367 N.E.2d 635]; *People* v. *Mason* (1978) 97 Misc.2d 706 [411 N.Y.S.2d 970].) It is the duty of the judiciary to insure that an accused's constitutional rights be protected in every case. (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 465 [82 L.Ed. 1461, 1467, 58 S.Ct. 1019]; *In re Moss* (1985) 175 Cal.App.3d 913, 926 [221 Cal.Rptr. 645]; *In re Newbern* (1959) 168 Cal.App.2d 472, 476-477 [335 P.2d 948].)

■ No relief, such as suppression or reversal of conviction, would remedy the violation. Furthermore, considering the extent and seriousness of the conduct of those in positions of authority and public trust, we find the grave sanction of dismissal to be the sole appropriate remedy for intentional and calculated violation of Boulas's rights. We find the government conduct in the present matter to be outrageous in the extreme, and shocking to the conscience; we are, thereby, compelled to order the dismissal of the present case.

■ It is true that petitioner, an individual who may be guilty of those crimes with which he is charged, will, in the words of Justice Cardozo, "go free because the constable has blundered." (*People* v. *Defore* (1926) 242 N.Y. 13, 21 [150 N.E. 585, 587].) However, this is not a case in which the constable appears to have merely blundered; indeed, the government went forth with the express intent of interference with an accused's constitutional right.

It is our finding that such actions, because performed by those invested with authority and discretion, far exceed a mere blunder. "Disinterested

zeal for the public good does not assure either wisdom or right in the methods it pursues." (*Haley* v. *Ohio* (1948) 332 U.S. 596, 605 [92 L.Ed. 224, 232-233, 68 S.Ct. 302] (Frankfurter, J., conc. opn.; see also *Nix* v. *Williams* (1984) 467 U.S. 431, 457 [81 L.Ed.2d 377, 396, 104 S.Ct. 2501] (Stevens, J., conc. opn.).)

CONCLUSION

It is the hope of this court that this opinion will serve to discourage government officials from interfering with the constitutional right of an accused to be assisted by counsel of his own choosing. "In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher.. For good or for ill, it teaches the whole people by its example." (*Olmstead* v. *United States* (1928) 277 U.S. 438, 485 [72 L.Ed. 944, 960, 48 S.Ct. 564] (Brandeis, J., dis.).)

"[T]he sanction of dismissal is clearly discretionary and is only required in particularly egregious cases." (*People* v. *Truer* (1985) 168 Cal.App.3d 437, 443 [214 Cal.Rptr. 869].) The evidence presented to the trial court established that, as a matter of law, Boulas was seriously prejudiced as a result of the improper governmental intrusion into his rights, as set forth in the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution, in that he lost his attorney of choice. Evidence of such interference in the attorney-client relationship, of its motivation, of its intended effect, and of its pointed intrusiveness, is manifest from the record before us. Accordingly, we find that the trial court abused its discretion when it denied Boulas's motion to dismiss.

Let a writ of mandate issue directing that respondent superior court grant, with prejudice, petitioner's motion to dismiss both counts of the information.

Gilbert, J., concurred.

**ABBE, J.**—I respectfully dissent.

In my view the majority holding that the trial court judge abused his discretion by failing to dismiss this criminal action is not justified.

The trial court ruling must be considered in the light of the circumstances. The case against Boulas was strong, as admitted by Attorney S. Aware of his predicament and during the time he was represented by Attorney S., Boulas hired Investigator Harkness to try to arrange a deal whereby he would get

lenient treatment in exchange for information about his sources of cocaine. Boulas and Harkness did not disclose these negotiations to Attorney S., the same person in whom Boulas now claims he had "great confidence."

· Boulas's decision to foresake the assistance of counsel of his own choosing in his effort to obtain a plea bargain preceded any improper conduct by law enforcement personnel. When the negotiations terminated after the approximately two-week period Boulas was without counsel, he rehired Attorney S. to represent him. This representation continued for approximately two more months.

The able and experienced trial judge, acting as a trier of fact, correctly determined that although the conduct of the law enforcement officials was indefensible, Boulas was not prejudiced in any way in his ability to defend himself. As the trial judge sagely observed, "there is no evidence that the underlying case was discussed or affected in any way, other than there was a substitution of counsel."

The conclusion by the majority that Boulas "lost his attorney of choice" because of the conduct of law enforcement officials seems tenuous. Boulas's claim of once having had "great confidence" in Attorney S. is belied by his conduct. The trial court did not find that the conduct of law enforcement personnel led to the irremediable breakdown of the attorney/client relationship between Boulas and Attorney S.

The trial court properly concluded that the holding in *United States* v. *Morrison* (1981) 449 U.S. 361 [66 L.Ed.2d 564, 101 S.Ct. 665] was more closely in point to the circumstances of this case than *Barber* v. *Municipal Court* (1979) 24 Cal.3d 742 [157 Cal.Rptr. 658, 598 P.2d 818] and *People* v. *Moore* (1976) 57 Cal.App.3d 437 [129 Cal.Rptr. 279].

In *Morrison* the United States Supreme Court held that "absent demonstrable prejudice, or substantial threat thereof, dismissal of [an] indictment is plainly inappropriate, even though the violation [of the Sixth Amendment] may have been deliberate. [Fn. omitted.] . . . The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." (*United States* v. *Morrison, supra,* 449 U.S. at pp. 365-366 [66 L.Ed.2d at p. 569].)

The motion of an accused to dismiss a criminal pending prosecution "in the furtherance of justice" under Penal Code section 1385 is addressed to the sound discretion of the trial court. (*People* v. *Johnson* (1966) 247 Cal.App.2d 331, 333 [55 Cal.Rptr. 450].) An appellate tribunal may not

substitute its judgment in the exercise of discretion for that of the trial court. (*People* v. *Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal. Rptr. 716].)

The trial judge applied the correct rule of law to the facts of this case as he expressly or impliedly found them to be. He did not abuse his discretion in denying the motion to dismiss.

I would deny the writ.

The petition of real party in interest for review by the Supreme Court was denied March 18, 1987.