Filed 2/24/15  Certified for Publication 3/23/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

THE PEOPLE,

    Plaintiff and Appellant,

        v.

EFRAIN VELASCO-PALACIOS,

    Defendant and Respondent.

F068833

(Super. Ct. No. TF006398A)

**OPINION**

APPEAL from a judgment of the Superior Court of Kern County.  H. A. Staley, Judge.*

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and Larenda R. Delaini, Deputy Attorneys General, for Plaintiff and Appellant.

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

*Retired Judge of the Kern Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**INTRODUCTION**

Defendant Efrain Velasco-Palacios was charged with lewd and lascivious conduct with a child under the age of 14 (Pen. Code, § 288, subd. (a)).  Prior to trial, the lower court found the prosecution inserted a false confession into a transcript of defendant's police interrogation and granted defendant's motion to dismiss on the basis of outrageous government misconduct.

On appeal, the People assert the trial court erred by dismissing the case against defendant, as defendant was not prejudiced by the prosecutor's misconduct.  We find defendant's constitutional right to counsel was prejudiced by the prosecutor's misconduct and affirm the lower court's order of dismissal.

**FACTS AND PROCEDURAL HISTORY**

On July 9, 2013, defendant was charged with five counts of lewd and lascivious conduct with a child after the daughter of defendant's girlfriend reported several instances of molestation.  Deputy public defender Ernest Hinman was assigned to defendant's case.  During pretrial settlement talks, Hinman was informed by the prosecuting attorney, Robert Murray, that the People would be willing to accept a settlement offer for a prison term of eight years.  Defendant was unwilling to make such an offer, but Hinman continued to attempt to persuade defendant to make a counteroffer and informed Murray that he believed the case would settle.

While Hinman was making these efforts, Murray told Hinman he was considering dismissing the charges against defendant and refiling the charges to allege penetrative acts, which carried a possible life sentence.  Murray also informed Hinman that, if the charges were refiled, Murray would be unlikely to accept any plea offers from defendant. After reviewing the evidence, however, Murray was unable to find any evidence of penetration.  On October 21, 2013, Murray concluded he could not find evidence to support the greater charges.  That same day, Murray provided Hinman with an English language translation of defendant's police interrogation, which had been conducted in

2.

Spanish.  The translation, however, contained two additional lines, added and fabricated by Murray, which read as follows:

> "[DETECTIVE]:  You're so guilty you child molester.

> "[DEFENDANT]:  I know.  I'm just glad she's not pregnant like her mother."

Upon receiving the transcript, Hinman informed defendant it included an admission of penetration that could be used to file more serious charges against defendant.  Defendant denied making the incriminating statements, and Hinman continued to advise him to make an offer to settle the case.

In the days following his conversation with defendant, Hinman sought to uncover why the incriminating lines were not present in the translation that had been prepared by his office.  According to Hinman, the audio recording of the interrogation he received ended abruptly, and he was concerned the People's transcript had been prepared from a different, longer audio recording.  Hinman was also concerned about raising the issue to Murray directly, as he did not wish to alert Murray to any incriminating statements Murray may have missed.  On October 28, 2013, seven days after Murray provided the falsified transcript, the parties were in court for what was scheduled to be the first day of defendant's trial.  Despite this appearance, Murray did not reveal the fabrication to Hinman.  The trial was subsequently delayed until November 4, 2013.

On October 30, 2013, nine days after receiving the falsified transcript, Hinman e-mailed Murray to request "the exact CD reviewed by [the People's] transcriber/interpreter," but Murray did not respond to Hinman's request.  Later that day, Hinman spoke to Murray in person about the e-mail, and Murray admitted to falsifying the transcript.

On November 15, 2013, Hinman filed a motion to dismiss, alleging outrageous and prejudicial prosecutorial misconduct by Murray.  The People filed a response to defendant's motion and asserted the lines were added "in jest," and defendant had not

3.

been prejudiced by the fabrication. The response also contained an affidavit from Murray stating Hinman had admitted to him defendant did not have a viable defense. Following the People's response, the Kern County Public Defender's Office removed Hinman from the case, citing the appearance of impropriety created by Murray's allegation that Hinman stated defendant did not have a valid defense, as well as the complexity that would arise from having Hinman work on the case after testifying about privileged matters in the upcoming evidentiary hearing.

That evidentiary hearing was held on December 17, 2013. At the hearing, Murray testified the lines were added as a joke, but admitted he did not have a joking relationship with Hinman and had not made such jokes in the past. Murray also testified he was aware Hinman was trying to settle the case, and he had meant to inform him of the fabrication but had not done so until October 30, 2013, despite receiving Hinman's e-mail about the transcript earlier that day and having seen Hinman in court on October 28, 2013. Murray also testified the October 28 appearance was the day defendant's trial was set to begin, but he had no expectation the trial was going to actually begin that day.

Defendant also testified at the hearing and stated he had had a good relationship with Hinman and had been comfortable going to trial with him as his attorney, but after Hinman approached him with the falsified evidence, defendant "[did not] even trust in [his] attorney anymore."

After the conclusion of the evidentiary hearing, the trial court issued a written opinion dismissing the charges against defendant. In support of its order, the trial court found Murray's dissemination of the fabricated transcript was made during discovery proceedings and was "in play" during settlement negotiations. The trial court also found Murray had failed to prove the fabrication was a joke, but even if it had been done in jest, Murray's dissemination of the fraudulent confession during plea negotiations was "egregious, outrageous, and … shocked the conscience."

4.

The trial court also found the misconduct "diluted the protections coming with the right to counsel" and ran the risk of fraudulently inducing defendant to enter a plea and forfeit his right to a jury trial. The court concluded by stating the following:

> "The court acknowledges that each case must be considered on its own merits and that there is no bright line test or set of factors the court must use in deciding an issue of this type. The court has considered factors that include: (1) The very serious nature of the crimes charged, the evidence of those crimes and the sensitive nature of the victims alleged in a case of this type, (2) the experience of the prosecutor, (3) the burdens that exist for this case to ever end in a settlement that can be seen as clear from the taint of improper conduct, (3) [*sic*: 4] and if the case [does] not settle, but goes to trial, the burdens that exist for it to end in that manner, clear from the taint of the improper conduct of the prosecution. [¶] The court does not believe that it can tolerate such outrageous conduct that results in the deprivation of basic fundamental constitutional rights that are designed to provide basic fairness."

The charges were dismissed, and this appeal followed.

## DISCUSSION

On appeal, the People argue the trial court erred by granting defendant's motion to dismiss. We disagree. A defendant's right to counsel is guaranteed by both the state and federal Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) In *United States v. Morrison* (1981) 449 U.S. 361, 365, the United States Supreme Court held the dismissal of criminal charges is an appropriate sanction when government misconduct results in "demonstrable prejudice, or substantial threat thereof" to a defendant's right to counsel. Similarly, California case law supports dismissal as a remedy for sufficiently outrageous government misconduct. (See *Morrow v. Superior* Court (1994) 30 Cal.App.4th 1252; *Boulas v. Superior Court* (1986) 188 Cal.App.3d 422; *People v. Moore* (1976) 57 Cal.App.3d 437.) "Where it appears that the state has engaged in misconduct, the burden falls upon the People to prove, by a preponderance of the evidence, that sanctions are not warranted because the defendant was not prejudiced by the misconduct. [Citations.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 967.)

5.

## I.     Standard of Review

On appeal, the parties dispute the relevant standard of review for cases involving the dismissal of criminal charges as a sanction for outrageous government misconduct. According to the People, a trial court's factual findings should be given deference, while its order of dismissal should be subject to independent review. Defendant, however, asserts an order of dismissal is reviewed only for an abuse of discretion.

In the past, this court has found "the sanction of dismissal is clearly discretionary." (*People v. Truer* (1985) 168 Cal.App.3d 437, 443; see *People v. Hayes* (1988) 200 Cal.App.3d 400, 412.) An abuse of discretion occurs when the lower court acts "in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice." (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.) The Second Appellate District has also found cases of this nature are reviewed for an abuse of discretion. (*Boulas v. Superior Court*, *supra*, 188 Cal.App.3d at p. 435; *People v. Shrier* (2010) 190 Cal.App.4th 400, 418.)

The Sixth Appellate District, however, has held the trial court's factual findings are reviewed for substantial evidence, while the sanction of dismissal should be reviewed independently. (*People v. Uribe* (2011) 199 Cal.App.4th 836, 855-858.) In doing so, the Sixth District "recognize[d] that there is some support for … an abuse of discretion standard." (*Id*. at p. 858.)

Despite this deviation by the Sixth Appellate District, we see no need to depart from our previous holdings finding the sanction of dismissal to be within the sound discretion of a trial court. That does not mean, however, that we give unfettered deference to a trial court's decision to dismiss criminal charges for government misconduct. "The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) Accordingly, while we defer to the sound exercise of discretion by a trial court, an exercise of discretion is only

6.

sound if it is reasonable under the applicable law and relevant facts. (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

Employing a deferential standard of review to a dismissal for government misconduct is not only in accord with our own precedent, however, but also with the standard of review employed in the analogous case of a dismissal pursuant to Penal Code section 1385. Under that section, a trial court may, on its own motion, dismiss criminal charges "in furtherance of justice," and our Supreme Court has held those dismissals are reviewed for an abuse of discretion. (*People v. Williams*, *supra*, 17 Cal.4th at pp. 158-159.) Likewise, we apply an abuse of discretion standard of review to dismissals for outrageous government misconduct.

## II. The Prosecutor's Misconduct was Outrageous and Conscience Shocking in a Constitutional Sense

As noted above, dismissal is an appropriate sanction for government misconduct that is egregious enough to prejudice a defendant's constitutional rights. (*United States v. Morrison*, *supra*, 449 U.S. at p. 365.) On appeal, however, the People dispute that Murray's misconduct was outrageous or conscience shocking in a constitutional sense, as it was not physically brutal. The People base this assertion on the Sixth Appellate District's opinion in *People v. Uribe*, *supra*, 199 Cal.App.4th 836 in which the court stated the following:

> "In the absence of a fundamental liberty interest having been abridged by the prosecutorial misconduct here …, defendant's substantive due process claim fails. [The prosecutor's] misconduct was certainly conscience-shocking in the sense that it involved false testimony by a prosecutor in a formal criminal proceeding. [Citation.] But it did not involve 'brutal and … offensive' conduct employed to obtain a conviction. [Citation.]" (*Id*. at p. 865.)

According to the People, this language stands for the proposition that misconduct must be "brutal" in order to shock the conscience and support a sanction of dismissal. The quoted passage, however, is taken from a portion of the holding in *Uribe* that deals with violations of a defendant's right to substantive due process and not violations of a

7.

defendant's right to counsel. (*People v. Uribe*, *supra*, 199 Cal.App.4th at pp. 861-865.) As such, the passage quoted above is inapplicable to issues in this case, and the People's reliance on it is misplaced.

More relevant to this case is the *Uribe* court's discussion of government misconduct as it relates to a defendant's right to counsel. After its discussion of substantive due process, the court in *Uribe* goes on to hold that "significant violations of the defendant's constitutional right to counsel causing the defendant substantial prejudice" can serve as appropriate grounds for dismissal. (*People v. Uribe*, *supra*, 199 Cal.App.4th at p. 866.) In fact, *Uribe* specifically cites several cases where the misconduct involved egregious, but not brutal, interference with attorney-client relationships. (*Id.* at pp. 867-869.) Among the cases cited is *Morrow v. Superior Court*, *supra*, 30 Cal.App.4th at page 1263 where the Second Appellate District held the act of eavesdropping on confidential courtroom communication "'shocks the conscience'" and merits the dismissal of criminal charges.

Indeed, there is simply no support for the People's contention that an act must involve some form of physical brutality in order to support a sanction of dismissal. Meanwhile, there is ample support for defendant's contention that egregious violations of a defendant's constitutional rights are sufficient to establish outrageous government misconduct. In fact, the *Uribe* court based its reversal of an order of dismissal not on the lack of brutality on the part of the prosecutor, but due to a lack of prejudice to the defendant's rights. (*People v. Uribe*, *supra*, 199 Cal.App.4th at p. 861.) Put differently, while some forms of brutality may be sufficient to violate a defendant's right to substantive due process, ample case law supports the conclusion that such brutality is not necessary to establish outrageous government misconduct.

Here, the trial court found Murray deliberately altered an interrogation transcript to include a confession that could be used to justify charges carrying a life sentence, and he distributed it to defense counsel during a period of time when Murray knew defense

counsel was trying to persuade defendant to settle the case. Further, Murray did not reveal the alterations until nine days later, and only then when he was directly confronted about the fabricated lines by defense counsel. This is egregious misconduct and, as is shown below, it directly interfered with defendant's attorney-client relationship. Because Murray clearly engaged in egregious misconduct that prejudiced defendant's constitutional right to counsel, the trial court was correct in finding Murray's actions were outrageous and conscience shocking in a constitutional sense.

## III. The Prosecutor's Misconduct Prejudiced Defendant's Right to Counsel

The right to counsel extends to protect the right of a defendant to retain the attorney of his or her choice. (*United States v. Gonzalez–Lopez* (2006) 548 U.S. 140, 147–150.) Accordingly, a defendant's right to counsel is prejudiced when government misconduct requires his or her retained counsel to withdraw, even if a competent replacement is obtained. (*Boulas v. Superior Court*, *supra*, 188 Cal.App.3d at pp. 429-430.) When counsel is appointed rather than retained, "the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained." (*Smith v. Superior Court* (1968) 68 Cal.2d 547, 562.)

It is undisputed Murray engaged in prosecutorial misconduct when he provided defense counsel with a fraudulent transcript of defendant's police interrogation while the plea bargaining process was ongoing. In response to Murray's misconduct, Hinman filed a motion to dismiss, and he and defendant waived the attorney-client privilege so they could testify at the evidentiary hearing. Because of that waiver of privilege, and because the People's response to the motion to dismiss contained an unsubstantiated claim that Hinman had privately admitted defendant did not have a viable defense, the public defender's office removed Hinman as defendant's attorney. Had Murray not distributed fraudulent evidence during discovery, there would have been no need for defendant's motion to dismiss, the waiver of attorney-client privilege, or the motion response that claimed Hinman had stated defendant did not have a viable defense. Therefore, it is

9.

abundantly clear Murray's prosecutorial misconduct directly led to defendant losing Hinman as his trial counsel.

In *People v. Noriega* (2010) 48 Cal.4th 517, 523-524, our Supreme Court acknowledged that, while a trial court could remove an appointed attorney over a conflict of interest, the improper removal of an indigent defendant's appointed counsel posed a threat to the defendant's constitutional right to counsel. There is simply no realistic difference between government action that improperly removes a defendant's counsel directly and government misconduct that necessarily leads to a defendant's counsel being forced to withdraw. In both scenarios government misconduct leads to the loss of a defendant's original counsel, and in both scenarios the defendant's right to counsel had been prejudiced.

Further, even if privilege considerations had not compelled the removal of Hinman as defendant's trial counsel, Murray's misconduct also inflicted irreparable damage to Hinman and defendant's attorney-client relationship. By providing Hinman with fabricated and deeply incriminating evidence during plea negotiations, Murray caused Hinman to use that fraudulent evidence to attempt to convince defendant to settle the case. It would be extremely difficult for defendant to trust his own trial counsel after being presented with false evidence and advised to settle. Indeed, defendant testified he was comfortable going to trial with Hinman as his attorney before Hinman approached him with falsified evidence, at which point defendant "[did not] even trust in [his] attorney anymore."

In that sense, this case strongly resembles *Barber v Municipal Court* (1979) 24 Cal.3d 742. In *Barber*, a group of protesters, including an undercover police officer, was arrested following a demonstration at a nuclear power plant. (*Id*. at pp. 746-747.) The prosecutor did not inform defense counsel the undercover officer was a police agent, and the officer subsequently attended attorney-client strategy meetings with the other defendants. (*Id*. at p. 748.) Upon being informed of the officer's true identity by the trial

10.

court, defense counsel moved for dismissal, but the trial court denied the motion. (*Id*. at pp. 749-750.) The matter was appealed to our Supreme Court, which ordered the charges dismissed. (*Id*. at pp. 756-760) In support of its order, the court held that the government's intrusion into the attorney-client relationship had prejudiced the defense by eroding the defendants' trust in their counsel and causing the defendants to be unwilling to fully cooperate with their attorney, who they feared was serving as an agent of the state. (*Id*. at p. 756.)

While Murray did not insert an undercover agent into defendant's meetings with Hinman, he did provide fraudulent and material evidence to Hinman that Murray either knew or should have known Hinman would discuss with defendant. Once the fraudulent nature of that evidence was revealed, defendant, like the defendants in *Barber*, was justified in having suspicions as to whether his attorney was representing defendant's interests or acting as an agent of the state by presenting falsified evidence to defendant and simultaneously advising defendant to settle the case. This interference with the trust aspects of the attorney-client privilege was prejudicial under *Barber*.

By contrast, the People's reliance on *People v. Uribe*, *supra*, 199 Cal.App.4th 836 is again misplaced as it is readily distinguished. In *Uribe*, the Sixth Appellate District had previously reversed a defendant's conviction due to a *Brady* (*Brady v. Maryland* (1963) 373 U.S. 83) violation, and upon retrial the trial court dismissed the charges against the defendant after the prosecutor perjured himself during a hearing concerning the prior *Brady* violation. (*Uribe*, *supra*, at pp. 840-841.) The court reversed the dismissal, holding the defendant had not been prejudiced, as the false testimony concerned a violation for which the defendant had already been granted a new trial. (*Id*. at pp. 872-874.)

In this case, however, Murray's misconduct did not relate to an ancillary proceeding concerning an issue for which there had already been an appropriate remedy. Instead, it was misconduct that severed the trust in defendant's attorney-client

11.

relationship, necessitated defendant waiving his attorney-client privilege, and led to the removal of counsel that defendant was comfortable with. Accordingly, the government's misconduct severely and prejudicially interfered with defendant's right to counsel.

## IV. Dismissal is an Appropriate Sanction for the Prosecutor's Misconduct

The People also assert on appeal that, even if Murray engaged in outrageous prosecutorial misconduct, dismissal was not an appropriate sanction. We disagree. In support of its argument, the People cite *United States v. Morrison*, *supra*, 449 U.S. 361 in which the court held the following:

> "Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial. [¶] More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." (*Id*. at p. 365.)

Based on this language, the People posit that dismissal was inappropriate in this case, as the proceeding could have "go[ne] forward with full recognition of the defendant's right to counsel and to a fair trial" after the transcription fabrication was revealed. (*United States v. Morrison*, *supra*, 449 U.S. at p. 365.) The People fail to note, however, that the court explicitly held in that same excerpt that dismissal was inappropriate only in the *absence* of "demonstrable prejudice" that "has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense." (*Ibid*.) Accordingly, there is no need to prove a proceeding could not go forward with full recognition of a defendant's right to counsel if it can be established that prejudice has already occurred.

12.

Indeed, while the People go to great lengths to establish defendant's right to a fair *trial* was not prejudiced by Murray's misconduct, they fail to address the fact *Morrison* applies to "the criminal proceeding" as a whole. (*United States v. Morrison*, *supra*, 449 U.S. at p. 365.) Accordingly, prejudice occurring during the plea negotiating process can be, and has been, sufficient to support a sanction of dismissal. (See *People v. Moore*, *supra*, 57 Cal.App.3d at pp. 441-442 [interference with defendant's right to counsel during plea negotiations merits dismissal]; *Boulas v. Superior Court*, *supra*, 188 Cal.App.3d at p. 433 [premising a plea offer on defendant firing counsel merits dismissal]; *Morrow v. Superior Court*, *supra*, 30 Cal.App.4th at p. 1255 [eavesdropping on attorney-client communication following a plea offer merits dismissal].)

Here, as we have explained, the defense was plainly prejudiced by Murray's dissemination of a falsified transcript during the plea negotiating process, and defendant's right to counsel was prejudiced by the need to remove Hinman as defense counsel, which was a direct consequence of Murray's misconduct. These are obvious examples of prejudice. As the People have failed to present any authority establishing dismissal is inappropriate in cases involving actual, demonstrated prejudice, dismissal is an appropriate sanction under *Morrison*.

In addition to this vindication of defendant's rights, the trial court's access to the sanction of dismissal also serves as a potent deterrent to government misconduct. In *Barber v. Municipal Court*, *supra*, 24 Cal.3d 742, our Supreme Court held the insertion of undercover agents into attorney-client strategy sessions required dismissal, as "[t]he exclusionary remedy is … inadequate since there would be no incentive for state agents to refrain from such violations. Even when the illegality is discovered, the state would merely prove its case by the use of other, untainted evidence. The prosecution would proceed as if the unlawful conduct had not occurred." (*Id*. at p. 759.)

Again, while Murray did not insert an undercover agent into defendant's meetings with Hinman, he did provide fraudulent and material evidence to Hinman that Murray

13.

either knew or should have known Hinman would discuss with defendant. Once the fraudulent nature of that evidence was revealed, defendant, like the defendants in *Barber*, was justified in having suspicions as to whether his attorney was representing defendant's interests or acting as an agent of the state by presenting falsified evidence to defendant while simultaneously advising defendant to settle the case.

Further, as in *Barber*, any remedy short of dismissal fails to provide "incentive for state agents to refrain from such violations." (*Barber v. Municipal Court*, *supra*, 24 Cal.3d at. p. 759.) Had defendant pled guilty before Hinman confronted Murray about the falsified evidence, it is unlikely Murray's flagrant misconduct would have ever come to light. If the sole penalty for attempting to induce a plea agreement through fraudulent evidence is to simply discard the fraudulent evidence and continue the proceedings, "the state would merely prove its case by the use of other, untainted evidence," and "[t]he prosecution would proceed as if the unlawful conduct had not occurred." (*Ibid*.) Indeed, if the People's proposed remedy were adopted, the only result of the prosecution's gross misconduct would have been the loss of defendant's attorney and the replacement of the prosecutor. Such a result would do little to deter future misconduct and nothing to vindicate defendant's constitutional rights.

Therefore, as the facts of this case plainly demonstrate prejudice, dismissal of the charges against defendant was an appropriate sanction under *Morrison*. Additionally, as merely excluding the fraudulent evidence would do nothing to deter future misconduct, dismissal of the charges against defendant was also an appropriate sanction under *Barber*. Given the trial court's discretion in dismissing a criminal case for outrageous government misconduct, we simply cannot conclude the trial court abused that discretion by employing a legally appropriate sanction, as the application of an appropriate sanction is not "arbitrary, capricious, or patently absurd." (*People v. Shaw*, *supra*, 64 Cal.App.4th at p. 496.) Accordingly, we affirm.

14.

**DISPOSITION**

The dismissal is affirmed.

_____
PEÑA, J.

WE CONCUR

_____
DETJEN, Acting P. J.

_____
SMITH, J.

Filed 3/23/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>EFRAIN VELASCO-PALACIOS,<br><br>    Defendant and Respondent. | F068833<br><br>(Super. Ct. No. TF006398A)<br><br><br>**ORDER GRANTING REQUEST FOR PUBLICATION** |

As the nonpublished opinion filed on February 24, 2015, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

 

 

                                      _____

                                                       PEÑA, J.

WE CONCUR

 

 

_____

DETJEN, Acting P. J.

 

 

_____

SMITH, J.