Filed 11/10/15  P. v. Zapata CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RAMON PEREZ ZAPATA,<br><br>Defendant and Appellant. | F068199<br><br>(Super. Ct. No. MCR041798)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]     Before Levy, Acting P.J., Kane, J. and Poochigian, J.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Ramon Perez Zapata of engaging in digital penetration with a child who was 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (b); count 1); attempted sexual intercourse with a child who was 10 years of age or younger (§§ 664/288.7, subd. (b); count 2); engaging in oral copulation with a child who was 10 years of age or younger (§ 288.7, subd. (b); count 3); and committing a lewd and lascivious act upon a child who was under the age of 14 years (§ 288, subd. (a); count 4). Appellant was sentenced to prison as follows: count 1, 15 years to life; count 3, a consecutive 15 years to life; count 2, a determinate seven years; and count 4, a determinate two years.

On appeal, appellant contends the trial court erred by failing to hold a hearing or make inquiries pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) after he expressed dissatisfaction with his appointed defense counsel. We determine appellant never clearly indicated he wanted to substitute counsel so the court had no duty to conduct a *Marsden* hearing. We note, however, that a clerical mistake appears in the abstract of judgment for the determinate sentences. We order the abstract of judgment amended but otherwise affirm.

## BACKGROUND

We do not recite the trial facts because the sole issue raised on appeal is whether appellant clearly indicated his desire to replace appointed counsel.

### 1. Appellant's first letter to the trial judge.

In May 2013, appellant handwrote a letter in Spanish to the trial judge. The letter was rewritten in English and was filed with the court on June 3, 2013, a little over two

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

weeks before trial started.  The English version of the letter, complete with numerous misspellings and grammatical mistakes, reads as follows:

"To Judge Dale Blea

"Thank you for reading this letter.  [A]nd light of the lack of information in my case I beg that you hear my petition, being that this will help you judge me with justly, for you to have [knowledge] of detective Zamudio short commings [*sic*].

"And record can be established about him so he no longer lies, premeditatively.

"'The filed report is incomplete[.]'

"A statement that wasn't recorded exist which I can demonstrate that did happen on 08/24/11 at approximately 5:00 p.m.  [H]is phone record will show when he calls the interpreter and where I manifest the intervenie [*sic*] of another person, waiting for them to detain[] him for having com[m]itted a crime at Cesar Chavez School.  [D]uring this part of my statement I proved the motives of why the pseudo victim gave a statement against me. I also proved the negligence and lack of responsibility on behalf of the detective who deliberately withheld the key statement for my defense.

"'I'm asking for a copy of the medical treatment' for [¶] Within the jail I have been receiving treatment for contagious venereal disease, but they have told me that I need a court order to obtain my medical record. [W]ith this copy I can demonstrate and prove that I never had any type of sexual contact ever with the victim.

"I do this personally because I consider that I have not received the necessary attention by my attorney and they haven't investigated what is necessary.

"I hope that it is possible that all information can be sent to the attorney in my case.

"Awaiting your comphrention [*sic*] and attention to this matter.

"Thank you."

On June 3, 2013, a court proceeding occurred before Judge Blea. Trial was confirmed for June 18, 2013. No reference was made to appellant's letter and no action was taken regarding the letter.

On June 17, 2013, the attorneys confirmed jury trial for the following day. No reference or action was taken regarding appellant's letter.

### 2. Appellant's second letter to the trial judge.

Following his convictions, appellant handwrote a letter in Spanish dated July 30, 2013. The letter was rewritten in English and typed. The trial court received the letter on or about August 7, 2013, almost two months before the sentencing hearing occurred. The letter reads as follows:

> "Re: Application for Appeal
>
> "We all know that the minor was found to be normal physically and that the DNA found in her belongs to a different person. Plus, the audio on my statement was shortened, fixed and incomplete. It was hiding the truth behind the motive and the date of when this problem started. The proof that was presented was solicited by the DA but the defense attorney presented was eliminated in my defense. This fabricated a case where I would lose and they conspired so that all my rights were trampled over. I don't know if you were ignoring this or if you had knowledge of it. I also do not know if I should consult:
>
> "Sacramento court of appeals
>
> "Amnesty International
>
> "Human Rights
>
> "None the less, I'd like to trust in your good judgment and rectitude. And now I ask you: Do I have the right to ask for an appeal and begin anew?"

### 3. Appellant's letter to the probation officer.

On or about August 20, 2013, appellant handwrote a letter in Spanish addressed to the probation officer. The letter was rewritten in English and typed. Both versions were

attached to the September 5, 2013, probation report.  The English version reads as follows:

> "In the beginning of 2011 [the victim] was obligated to tattoo on her hand 'N 13' to be a member of a criminal street gang at Cesar Chavez Elementary School.  After two to three months she came and asked my wife for help because regarding bleeding from her intimate parts.  At that time we thought she was beginning menstruation.  However, the following month she did not menstruate.  Her attitude towards me continued and she continued to be involved in the criminal street gang.  I began to think that someone had harmed her and I began to ask her.  I looked for additional tattoos on her because in the past she told me that she was going to get another tattoo.  She always told me it was none of my business.  I continued trying to investigate to know for myself.  I know I went about it the wrong way and in the process I made the mistake of touching her.  I made it very clear and sincere that I never had any type of penetration or oral sex, or anything else that they accused me of.  I hope that you take into consideration the way this [c]ase was orchestrated, altering and editing my declaration.  Furthermore, they ignored the crime committed at the school involving her in order to distort the truth of the problem.  I feel laughed at and discriminated against by District Attorney Sally Moreno and Sgt. Zackary Zamudio who are … capable of walking all over my rights by finding a way to slander me and hide shamelessly the truth. I don't feel justice was served the deal in my case and the course they took with my case by influencing the jury to present a guilty verdict against me by eliminating the proof that my attorney provided in my defense such as: The girl is a virgin, [t]he DNA found on the girls [*sic*] breast did not belong to me but, someone else, the original charges were changed adopting the past results, the judge allowed jurors to disclose of the process on Facebook, my recorded declaration was heard shamelessly edited, hiding the dates and the motive of the problem, Sgt. Zamudio acted negligently as he did not investigate the other person involved that I mentioned, a witness in my defense was interviewed and declaration regarding the girls tattoo, nevertheless they decided not to touch the subject and present it to the jurors."

On October 3, 2013, the parties met in court for sentencing.  The trial court indicated it had read and considered both the probation officer's report and appellant's letter.  Later that day, as the court was about to pronounce sentence, appellant's defense

counsel indicated that appellant wished to address the court. Appellant said the following:

> "Okay. Despite the result, I continue to think that -- that anybody -- that any person must take responsibility for their errors. But … definitely the result of this trial … is indicative of abusive power and actions, corrupt actions on behalf of the District Attorney.

> "All of us know that the minor, she's still a virgin, and that the DNA -- that they were found that were -- that was found on her breasts belonged to somebody else and that is not mine. And I shouldn't -- we know that -- we know that the District Attorney cut and edited my statement in order to cover up the date and the motive where this problem started. Now I failed-- I feel discriminated again in front of -- on behalf of the District Attorney, and they are making me pay for something that never happened.

> "I just ask that Your Honor pay attention to this and to learn how to do things at a later date in a better fashion and based on truth. That's all, your Honor."

After a short irrelevant exchange, the court asked appellant if he had anything else. The following exchange occurred:

> "[APPELLANT]: Well, I still have just the question, the motive, why this whole problem started, it is founded on -- in a crime that was perpetrated at the Cesar Chavez school when the girl -- they had the tattoo placed on her with the No. 13 and -- and this instance, I have actually made a report of it in at least ten different spots, ten different places. I have sent letters for somebody to stop that criminal activity at that school, because I know that the influence of that criminal activity can affect how my son is raised. And, to date, I still don't know if that action is … something just in passing in this community, or if, in reality, I'm just exaggerating. I just don't know.

> "THE COURT: All right. Thank you, sir."

The trial court noted that the issues involved at the school were not the subject of the sentencing hearing and proceeded to pronounce sentence.

6.

**DISCUSSION**

**I.     The Trial Court Was Not Required To Make An Inquiry Under *Marsden*.**

Appellant asserts that his individual complaints were sufficient to trigger the trial court's obligation to inquire into the competency of his appointed counsel and make inquiries under *Marsden*, resulting in error.  He further argues that even if his individual complaints were not sufficient to trigger the court's duty, the context of his complaints must be examined in light of his low education, his need for an interpreter, and his lack of prior experience with the criminal justice system.  He contends that a clear indication of his dissatisfaction with his appointed counsel is clear when everything is read together cumulatively.  Finally, he asserts that the trial court's error resulted in an unfair trial and denied him the right to the effective assistance of counsel under the Sixth and Fourteenth Amendments.  He argues that reversal is required.  We disagree.

A criminal defendant is constitutionally entitled to the assistance of court-appointed counsel if unable to hire private counsel.  (*Marsden, supra,* 2 Cal.3d at p. 123.)  A defendant has the right to discharge appointed counsel and substitute another attorney, but that right is subject to the trial court's discretion.  (*Ibid.*)  When a defendant complains about the adequacy of appointed counsel, the trial court must permit the defendant to articulate the basis for his concerns so the court can determine if they have merit and, if necessary, appoint new counsel.  (*Id.* at pp. 123-124.)  The rule requiring a *Marsden* hearing also applies posttrial because a defendant is entitled to competent representation at all times.  (*People v. Smith* (1993) 6 Cal.4th 684, 691.)  Substitute counsel should be appointed when the court determines the first appointed attorney is not providing adequate representation or there is an irreconcilable conflict so that ineffective representation will likely occur.  (*People v. Sanchez* (2011) 53 Cal.4th 80, 88-89.)

The defendant must move in some manner to discharge the relationship.  (*People v. Lucky* (1988) 45 Cal.3d 259, 281.)  "The mere fact that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court

under a duty to hold a *Marsden* hearing." (*Ibid.*) An indigent defendant does not have a constitutional right to an attorney conducting the defense according to the defendant's wishes, and a disagreement over trial tactics does not necessarily compel appointment of new counsel. (*Id.* at pp. 281-282.) A defendant is not required to file a formal motion to relieve appointed counsel. (*People v. Valdez* (2004) 32 Cal.4th 73, 97.) However, the defendant must provide some clear indication that new counsel is desired. (*Ibid.*) Without such a clear indication in the record, no error occurs when the trial court fails to conduct a *Marsden* hearing. (*People v. Richardson* (2009) 171 Cal.App.4th 479, 484.) A defendant must do more than grumble about his counsel's performance. (*People v. Lee* (2002) 95 Cal.App.4th 772, 780.)

In *People v. Dickey* (2005) 35 Cal.4th 884, the defendant stated he was not satisfied with the competency of his attorney, noting his counsel failed to call witnesses who were available and crucial to his defense, his counsel failed to raise crucial issues at trial, and his counsel failed to ask him certain questions while he was on the witness stand. (*Id.* at p. 919.) Our Supreme Court determined the defendant did not clearly indicate he wanted substitute counsel appointed for the penalty phase of his trial. (*Id.* at pp. 920-921.) Accordingly, *Dickey* concluded that the trial court did not err. (*Id.* at p. 920.)

Here, appellant's first letter indicated his strongest dissatisfaction with his counsel, noting he was not receiving the necessary attention and "they" had not investigated what appellant believed was necessary. However, similar to the defendant in *People v. Dickey, supra,* 35 Cal.4th 884, neither this letter, nor any of appellant's other communications, can be construed as an indication, must less a "clear" one, that he desired new counsel. Indeed, appellant's first letter asks the court to send any information it has to his current counsel. Appellant's dissatisfaction with his appointed counsel appears more like grumbling about performance (see *People v. Lee, supra,* 95 Cal.App.4th at p. 780), or a difference in opinion over trial tactics (*People v. Lucky, supra,* 45 Cal.3d at p. 281) than a

desire to end the relationship. A majority of appellant's comments were complaints directed at the prosecution and law enforcement.

Via letter dated October 30, 2015, appellant cites this court's opinion in *People v. Velasco-Palacios* (2015) 235 Cal.App.4th 439 (*Velasco-Palacios*) as new authority in support of his arguments that a statement was not recorded, and his own statement was shortened, fixed, incomplete, cut and edited. This authority is unpersuasive.

In *Velasco-Palacios*, the prosecutor inserted a false confession into a transcript of the defendant's police interrogation. The defendant's motion to dismiss was granted on the basis of outrageous government misconduct. (*Velasco-Palacios, supra,* 235 Cal.App.4th at p. 442.) The court found that the misconduct "'diluted the protections coming with the right to counsel'" and risked the defendant being fraudulently induced to enter a plea and forfeit his right to a jury trial. (*Id.* at p. 444.) On appeal, this court affirmed the trial court's order of dismissal because the defendant's constitutional right to counsel was prejudiced by the prosecutor's misconduct. (*Id.* at pp. 451-452.)

*Velasco-Palacios* did not involve a defendant's stated dissatisfaction with appointed defense counsel or a request to remove appointed counsel. *Velasco-Palacios* is inapposite to the present analysis and does not dictate reversal. When appellant's communications are read individually or collectively, this record does not establish his clear desire to discharge his appointed counsel. This is true even when appellant's low level of education, language skills and lack of contact with the criminal justice system are considered. The trial court was under no duty to conduct a *Marsden* hearing or make similar inquiries.[2] Appellant's convictions will not be reversed.

---

[2] Because the trial court did not err, we do not address appellant's contention that he was denied a fair trial and the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments.

**II. The Abstract Of Judgment For The Determinate Sentences Must Be Amended.**

A clerical mistake appears in the abstract of judgment for the determinate sentences. The two determinate sentences imposed against appellant, counts 2 and 4, are erroneously listed in the abstract of judgment as counts 1 and 3. An appellate court has jurisdiction to order correction of an abstract on its own motion so that the abstract accurately reflects the sentencing court's oral judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, we order the determinate abstract of judgment modified to reflect convictions under counts 2 and 4, respectively.

## DISPOSITION

This matter is remanded to the trial court to correct the abstract of judgment for the determinate sentences to reflect conviction in counts 2 and 4, respectively. The trial court shall then forward the amended abstract of judgment to the appropriate authorities. The judgment is otherwise affirmed.